**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SAMUEL CHILDS,**

      **Plaintiff,**

v.                                                  **Case No.  8:07-cv-299-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**
_____/

**O R D E R**

Plaintiff, Samuel A. Childs III, seeks judicial review of the denial of his claim for Supplemental Security Income payments. For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was thirty-five years of age at the time of his administrative hearing in June 2006. He stands 5', 7" tall and weighed 180 pounds. Plaintiff has a sixth grade education and was in classes for the learning disabled. His past work experience was as a grocery bagger, houseman for a hotel, construction laborer and dishwasher. Plaintiff applied for Supplemental Security Income payments in June 2003, alleging disability as of May 1, 2003, by reason of depression, mood swings and schizophrenia. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ").  The Plaintiff was represented at the hearing by counsel and testified in his own behalf.

In essence, Plaintiff testified that he suffers from depression, anxiety, and mood swings and is unable to engage in full-time work due to these conditions.  By Plaintiff's account, he has never been able to hold a job for more than three months, mainly because he cannot get along with others and he gets picked on.  He has a history of mental health problems.  Plaintiff's mental difficulties worsened after his mother died in a house fire when he was twenty-one.  He has no insurance coverage and receives care through county assistance.  Plaintiff testified that he takes Zyprexa, Doxepin, and Risperdal for mood swings, depression, and anxiety.  Plaintiff also testified to a problem with his right ankle.  By his testimony, he has a plate in it and it occasionally swells up and hurts.

Plaintiff estimated that he has about five or six good days in a month and the balance are bad days.  On bad days, he may play with the dog but otherwise he just walks around the house angry.  He acknowledged that he has attempted to do temporary work and does in fact work on occasion.  He does not believe he could hold a full-time job though because of his mood swings.  By Plaintiff's account, he can read and write a little.  He started using alcohol at age fourteen or fifteen and estimated that he drinks a six-pack of beer every two or three days.  He uses marijuana a couple times a month, about $10.00 worth, and he has used cocaine and crack cocaine.  The doctor has advised him to stop drinking and using drugs.  Although he does not have a driver's license, he will occasionally drive.  He acknowledged a

couple of past incarcerations, one of which arose when he used a knife on someone and another which involved him driving without a license. (R. 339-52).

Although a vocational expert was present at the hearing, the ALJ took no testimony from him.

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of July 21, 2006, the ALJ determined that while Plaintiff has severe impairments related to schizo-affective disorder and personality delusion (sic), he nonetheless had the residual functional capacity to perform a full range of heavy exertional work. Upon this finding, the ALJ concluded that Plaintiff could perform his past work as a bag boy, hotel porter, dishwasher, and laborer. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 13-20). The Appeals Council denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred finding that the Plaintiff has past relevant work as a bag boy, hotel porter, dishwasher and laborer; and

(2) The Commissioner erred by making findings as to the Plaintiff's residual functional capacity without considering his level of functioning when not following a prescribed course of medical treatment and determining whether the failure to follow medical treatment is excusable.

By his first claim, Plaintiff contends that the ALJ erred in concluding his former work as a bag boy, porter, dishwasher and laborer was past relevant work as such term is defined under the Act. Conceding that his earnings record reveals that he worked at many different jobs in the fifteen years preceding his alleged onset date, he nonetheless contends that the same earnings record reveals that the work was of short duration and insufficient to amount to substantial gainful activity as such term is defined under the Act. By this argument, not all past work equals "past relevant work" for purposes of the Social Security evaluation. More particularly, he notes that under the regulations, for the years after 1989, earnings of less than $300.00 per month are presumptively not substantial gainful activity while earnings of more than $500.00 per month are presumptively substantial gainful activity.

Citing his earnings record, Plaintiff urges that the decision should be reversed because his earnings were insufficient to constitute substantial gainful activity and thus, past relevant work. At a minimum, he urges the case should be remanded for further consideration.

In response, the Commissioner argues that even if the ALJ erred in concluding at step four of the evaluation process that Plaintiff had past relevant work which he could still do despite his impairments, the error was harmless as the ALJ made an alternative finding at step five of the evaluation process by concluding Plaintiff could perform a full range of heavy exertional work.

In reaching his decision, the ALJ applied the five-step sequential evaluation process dictated by the Regulations. *See* 20 C.F.R. § 416.920(a)(4). The decision was reached at the fourth step of the process. At this step, the ALJ must determine whether the claimant is capable of performing his past relevant work. That review involves the assessment of a claimant's residual functional capacity and requires consideration of the physical and mental demands of his former work. In this regard, "the ALJ has the duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant [himself] is capable of doing before [the ALJ] determines that [h]e is able to perform h[is] past relevant work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989) (emphasis in the original); *see also Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986). While the claimant bears the burden at this step of demonstrating an inability to return to his past relevant work, the ALJ has a concomitant duty to develop a full record in this regard. *Lucas v. Sullivan*, 918 F.2d

1567, 1574 n. 3 (11th Cir. 1990) (citing *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987); *Nelms*, 803 F.2d at 1165)).

Courts examining this issue have uniformly held that to qualify as past relevant work, the work must have been substantial gainful activity. *See Vaughn v. Heckler,* 727 F.2d 1040, 1042 (11th Cir. 1984); *see also Lauer v. Bowen*, 818 F.2d 636, 639 (7th Cir. 1987); *Connolly v. Bowen*, No. 88-3116, 879 F.2d 862, *3 (4th Cir. 1989) (table); *Boyes v. Sec. of HHS*, 46 F.3d 510, 512 (6th Cir. 1994); *Newman v. Chater*, No. 95-5198, 91 F.3d 159, *1 (10th Cir. 1996) (table). This follows because under the Act, "disability" is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d). Under the regulations, "substantial gainful activity" is "work activity that is both substantial and gainful." *See* 20 C.F.R. 416.972. "Substantial" work activity is "work activity that involves doing significant physical or mental activities" and "gainful" work activity is work activity done "for pay or profit." *Id.* According to the regulations, "past relevant work" is work the claimant performed within the past fifteen years that was substantial gainful activity and lasted long enough for the claimant to learn to do it. *See* 20 C.F.R. § 416.960(b). The regulations use earnings guidelines to assist in the determination of whether a claimant's past work constitute substantial gainful activity. *See* 20 C.F.R. 416.974.

Here, as recognized by the ALJ, Plaintiff claimed that he had difficulty finding and keeping work because of his mental problems (R. 17) and his earnings record confirmed that he worked at a number of different jobs in the fifteen years preceding his alleged onset date. *See* (R. 56-61). Upon my review, these same earnings records reveal that Plaintiff never had

earnings sufficient for a presumptive finding of substantial gainful activity. While the decision reflects that the ALJ was well versed in these pertinent regulations (R. 14), it does not reveal that he applied them in his step four analysis.[1] Thus, I conclude that Plaintiff is correct in his assertion that the ALJ erred in concluding that Plaintiff's former work was past relevant work as such is defined under the Act. The Commissioner does not strongly protest otherwise, urging that any such error was harmless because the ALJ made an alternative finding at step five, namely, that on the basis of Plaintiff's RFC for a full range of heavy exertional work,[2] grid rule 204.00 allowed for the determination that Plaintiff was not disabled.

The decision reflects that after concluding that Plaintiff could perform his past relevant work at step four, the ALJ proceeded to step five to consider whether Plaintiff could perform other work as well. Although a vocational expert was present at the hearing, the witness was not called to testify. Rather, in reaching the alternative conclusion at step five, the ALJ looked solely to the grids for support of his conclusion. The Commissioner urges that this was permissible given that the grids would direct a finding of not disabled at every exertional level for this Plaintiff even if he had no past relevant work at all. However, it appears to me that the ALJ could not reach this step five conclusion under the circumstances without calling a VE. *See Marbury v. Sullivan,* 957 F.2d 837 (11th Cir. 1992) (ALJ erred in

---

[1] Furthermore, the decision lacks any explicit findings concerning the functional demands of any of this past work only the blanket conclusion that Plaintiff could still do this type work. Thus, how the ALJ arrived at his conclusion is unclear.

[2] As for mental functional limitations, the ALJ concluded Plaintiff had mild limitations in activities of daily living and in maintaining concentration, persistence or pace, and moderate limitations in maintaining social functions. In the ALJ's view, Plaintiff could follow simple 1-2 step instructions.

8

not taking VE testimony when record revealed that nonexertional impairments prevented claimant from performing an unlimited range of work.).  As the decision reflects, the ALJ concluded that Plaintiff's ability to perform work at all exertional levels was compromised (to some unspecified degree) by his (unspecified) nonexertional limitations, but that these limitations had little or no effect on the occupational base of unskilled work at any exertional level.[3]  (R. 19).  As a result, the ALJ concluded that "a finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines." *Id.*  Absent a clear statement by the VE of the full impact of Plaintiff's nonexertional impairments, it is impossible to determine whether the ALJ appropriately decided the case on his own or erred by not calling on the VE to address the effect of the mental limitations on Plaintiff's ability to perform other work.

Thus, I conclude that a remand for further explication by the ALJ is appropriate.  *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987).  First, the conclusion by the ALJ concerning Plaintiff's past relevant work appears in error as set forth above, and thus the decision at step four is not supported by substantial evidence and is contrary to applicable standards.  Beyond that matter, I find it inappropriate to conclude that the error was harmless on the basis of the ALJ's step five findings given that it is unclear just how limiting the ALJ

---

[3]The Eleventh Circuit has recognized that nonexertional limitations can cause the grids to be inapplicable *only* when they are severe enough to prevent a wide range of gainful employment at a given exertional level.  *See Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  Thus, the ALJ should make a specific finding as to whether or not any nonexertional limitations preclude a wide range of employment at the given exertional level.  *See id.*  Where such determination is made, it is reviewed only to determine whether it is supported by substantial evidence.  *Id.*

9

found Plaintiff's impairments to be and no VE was used to assess the vocational issues.[4]   The ALJ was obliged to give a clear statement as to the effects of Plaintiff's schizoaffective disorder and personality delusion[5] and any other nonexertional impairment on Plaintiff's capacity to work.[6]

Because remand is required on the above grounds, the other issue raised by Plaintiff need not be addressed. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). However, in order to avoid future allegations of error, the ALJ should clearly articulate his mental residual functional capacity determination and the effect, if any, the failure to follow a prescribed course of treatment has on such.

---

[4]Here, the ALJ states only that the functional limitations caused by Plaintiff's mental impairments are "mild" impairment of his daily activities and concentration and "moderate" limitations with social functions. Beyond, this the ALJ adds that Plaintiff is limited to "1-2 step instructions." Given the Plaintiff's personal history and testimony, his moderate limitations in social functioning would appear to be of vocational significance also. As the ALJ's suggested, these limitations would prevent Plaintiff from performing a full- range of heavy work, and on that finding, I believe the ALJ was obliged to take VE testimony. As the ALJ noted, where the claimant has solely nonexertional limitations, the grids provide only a framework for decision. Here, it appears that they were actually employed as a basis for the decision.

[5]It is also unclear to me from this record, what the ALJ meant by "personality delusion."

[6]The ALJ concluded that Plaintiff's [mental] impairments "are basically of the same severity as determined by DDS (Exhibit 3F)." (R. 18). Thus, it appears that the ALJ relied on the DDS (Disability Determination Services) psychologists' opinions when determining Plaintiff's mental functional capacity. These psychologists, however, each identified more specific mental limitations than that stated by the ALJ. Notably, each identified moderate social restrictions that arguably would preclude the use of the grids. *See* (R. 192, 232). One of the DDS psychologists also identified a moderate limitation in the ability to sustain an ordinary routine without special supervision. (R. 231). Specific mental limitations should be identified on remand.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards.  The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order.  Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 10th day of March 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record